**Toni Hobson JACOBS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–06–00556–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 14, 2007.

Discretionary Review Refused
Oct. 17, 2007.

Paul Decuir, Houston, for Appellant.

Charles A. Rosenthal, Jr., Dist. Atty.–Harris County, Alan Curry, Asst. Dist. Atty., Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and BLAND.

**OPINION**

JANE BLAND, Justice.

Appellant Toni Hobson Jacobs pleaded not guilty to the Class A misdemeanor offense of possession of a gambling device. *See* TEX. PEN.CODE ANN. § 47.06(a) (Vernon 2003). A jury found Jacobs guilty and the trial court assessed punishment at four days' confinement and a $300 fine. In three issues, Jacobs contends (1) the trial court erred in denying her motion for directed verdict because the State failed to prove that her gambling business was not located in a private place, (2) the trial court abused its discretion in denying her motion for new trial because the prosecutor failed to provide her with exculpatory evidence, and (3) the evidence is legally insufficient to support her conviction for

possession of a gambling device. We conclude that the evidence is legally insufficient to support Jacobs's conviction for possession of a gambling device because the State did not link Jacobs to any gambling device. We therefore reverse and render a judgment of acquittal.

### Background

The Harris County Sheriff's Department received several complaints that a gambling business called "Gone Shopping" was operating in a shopping center in Crosby, Texas. The business sported a small sign that said, "Open," and a note on the door stated that the business was a private club and membership was required for entry.

Detective O. Muir visited the business undercover on December 1, 2005 to investigate. Muir rang the door buzzer. An attendant answered and asked if he had a membership card. When Muir responded negatively, the attendant asked him how he knew about the business. Muir responded that someone told him about the business while he was playing an "8 liner" at a convenience store. *See generally* Jason Johns, Comment, *Win, Lose, or Draw: The Rise of Eight–Liner Video Devices in Texas*, 34 TEX. TECH L.REV. 263 (2003) (explaining eight-liner gambling devices and gambling businesses in Texas). Muir obtained a membership card by giving the attendant his driver's license.

The attendant invited Muir to enter the business. He sat down at a device called "J & B Mystery." Muir inserted five dollars into the device and received 500 points. The business matched the amount that Muir put in the device so he also received an additional 500 points. While playing the device, Muir discovered that it awarded points in excess of ten times the amount of his original bet. Muir tried to leave the business when he attained 1108 points, but the attendant informed him that he could not leave until he reached 1500 points because the business had matched the amount of money he put into the device. The attendant also told him that customers say, "ticket out" instead of "cash out," upon leaving, "just to keep everything cool." Muir continued to play and decided to leave when he reached 1508 points. The attendant pushed a button on Muir's device and it dispensed three tickets. The attendant then gave Muir fifteen dollars in exchange for the three tickets. In a spiral notebook, the attendant documented the date, the amount she paid Muir, and the device he had been playing. Muir signed next to the entry in the notebook.

Muir returned to Gone Shopping on December 2, 2005 and used his membership card to enter. Muir signed the guestbook and played another J & B Mystery device. Muir put five dollars into the device and received 500 points. Muir ticketed out at 500 points. On this occasion, the device did not dispense a ticket, but the attendant handed Muir five dollars in cash. The attendant wrote down the information in the notebook and Muir signed his name.

Muir visited Gone Shopping for a third time on December 5, 2005. Muir inserted five dollars into a "Fruit Bonus" device and received 500 points. Muir ticketed out when he reached 504 points. The attendant gave Muir five dollars and he signed the spiral notebook. Muir never observed Jacobs to be present at the business on December 1, 2, or 5.

Based on Muir's undercover work, Sergeant J. Durbin obtained and executed a search warrant at the business on December 8, 2005. The attendant at the door introduced Durbin to Jacobs, who was identified as the owner of the business and the lessee of its premises. The Sheriff's Department seized $2,665.95 in cash and forty-one eight-liner devices found on the

premises, twenty-eight of which were operational at the time. The Sheriff's Department also issued gambling citations to the customers present at the business when the warrant was executed.

Durbin later discovered that the devices seized on December 8, although similar in type, were not the same devices that Muir played on December 1, 2, and 5. Durbin acknowledged that none of the devices seized on December 8 pay a player in cash.

Mike Hobson, Jacobs's ex-husband, testified that a vendor removed all the gambling devices from Gone Shopping on December 4 and 5, and that by 8:00 a.m. on December 5, all of the devices were gone and the premises was "vacant, empty and closed." Hobson assisted Jacobs in setting up new devices that a vendor delivered on December 6 and 7.

Jacobs testified that she leased the premises where Gone Shopping was located in September 2005, but had immediately subleased the premises to a third party. She also leased the devices seized on December 8 and produced a lease agreement dated December 6, 2005. Jacobs testified that the devices themselves did not dispense tickets or money; instead, customers could redeem points for prizes. Jacobs also testified that her business was a private club and that customers had to have a driver's license to become a member. Jacobs told the customers present at her business on December 8 that the games were not set up, and provided them with money so that they could "check out the machines."

Wong Vo, a technician for the device vendor, arrived at the business on December 8 while the Sheriff's Department was executing its search warrant. Vo testified that he delivered the devices to Jacobs's business on December 7, and returned to set them up on December 8. Vo testified that he planned to set up the devices ac-

cording to Texas law so that they would not "pay out" more than ten times the original bet.

J. Richard McGoey is an attorney who leased the devices to Jacobs and testified that Jacobs planned to operate them in accordance with Texas law. McGoey also testified that Jacobs planned to open her business on December 9, 2005.

## Legal Sufficiency

### A. Standard of Review

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Evans v. State*, 202 S.W.3d 158, 161 (Tex.Crim.App.2006); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005). The standard is the same for both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim.App.1995). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this was the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim.App.1991). Instead, our duty is to determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843.

## B. Possession of a Gambling Device

In her third issue, Jacobs contends the evidence is legally insufficient to support her conviction for possession of a gambling device.

"A person commits [the offense of possession of a gambling device] if, with the intent to further gambling, he knowingly owns, manufactures, transfers, or possesses any gambling device that he knows is designed for gambling purposes or any equipment that he knows is designed as a subassembly or essential part of a gambling device." TEX. PEN.CODE ANN. § 47.06(a).

"Gambling device" means any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The term:

(A) includes, but is not limited to, gambling device versions of bingo, keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that as a result of the play or operation of the game award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits; and

(B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

*Id.* § 47.01(4) (Vernon 2003). " 'Thing of value' means any benefit, but does not include an unrecorded and immediate right of replay not exchangeable for value." *Id.* § 47.01(9).

Texas Penal Code section 6.03 provides:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.* § 6.03(a)-(b) (Vernon 2003). " 'Possession' means actual care, custody, control, or management." *Id.* § 1.07(a)(39) (Vernon Supp.2006).

## C. Analysis

■ Viewing the evidence in this case in the light most favorable to the verdict, a rational trier of fact could not have found beyond a reasonable doubt that Jacobs, acting with the intent to further gambling, knowingly possessed a gambling device that she knew was designed for gambling purposes. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Drichas,* 175 S.W.3d at 798.

First, the evidence is legally insufficient to support Jacobs's conviction for possession of a gambling device for the devices seized on December 8, 2005. The evidence is undisputed that the devices seized from Jacobs's business on December 8 were not the same devices that were present on December 1, 2, or 5. The record contains no evidence that the devices seized on December 8 "afford[ed] the player an opportunity to obtain anything of value...." Tex. Pen.Code Ann. § 47.01(4). The devices seized on December 8 did not pay the player in cash, and by themselves were only capable of awarding points or, in some cases, tickets. The devices were therefore not gambling devices per se. *See id.* To prove that these devices were used as gambling devices, the State must have produced evidence that the player could exchange the points or tickets for "anything of value" beyond the parameters of the statute. *Id.* " 'Thing of value' means any benefit, but does not include an unrecorded and immediate right of replay not exchangeable for value." *Id.* § 47.01(9). Here, the State produced no evidence that a player of these devices could or did exchange points or tickets for

a thing of value.[1] *See, e.g., Hardy v. State,* 102 S.W.3d 123, 132 (Tex.2003) (holding that devices that dispensed tickets that could be exchanged for cash were gambling devices); *Jester v. State,* 64 S.W.3d 553, 558–59 (Tex.App.-Texarkana 2001, no pet.) (holding that evidence was sufficient to support finding that devices were gambling devices). The evidence is therefore legally insufficient to support Jacobs's conviction for possession of a gambling device for the devices seized on December 8, 2005. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Drichas,* 175 S.W.3d at 798.

Second, the evidence is legally insufficient to support Jacobs's conviction for possession of a gambling device for the devices present at the business on December 1, 2, and 5.[2] The testimony of Detective Muir is legally sufficient to prove that the devices present at the business on December 1, 2, and 5 were gambling devices because Muir testified that he received cash in exchange for playing the devices. *See* Tex. Pen.Code Ann. § 47.01(4). However, the only evidence that Jacobs "possessed" these devices was her testimony that she leased the premises where Gone

---

1. Jacobs's testimony that she provided the customers present at her business on December 8 with money so that they could "check out the machines" does not constitute evidence that the machines were gambling devices. A device does not become a "gambling device" until it "affords the player an opportunity to obtain anything of value." Tex. Pen. Code Ann. § 47.01(4) (Vernon 2003). Additionally, the fact that the devices seized on December 8 contained money does not constitute evidence that they were gambling devices without evidence that they could pay the money to a player, as opposed to taking money from a player. *Id.*

2. The information in this case reads:
   Comes now the undersigned Assistant District Attorney of Harris County, Texas on behalf of the State of Texas, and presents in and to the County Criminal Court at Law No. 10 of Harris County, Texas, that in

Harris County, Texas, **TONI HOBSON JACOBS,** hereafter styled the Defendant, heretofore on or about **DECEMBER 8, 2005,** did then and there unlawfully with intent to further gambling, knowingly POSSESS A GAMBLING DEVICE, namely, J & B MYSTERY, that he [sic] knows is designed FOR GAMBLING PURPOSES.

The State may allege the commission of an offense "on or about" a certain date, and this allegation allows the State to prove that the offense occurred on any date that is anterior to the presentment of the information or indictment and within the statutory limitations period. *See Garcia v. State,* 981 S.W.2d 683, 685-86 (Tex.Crim.App.1998); *Sledge v. State,* 953 S.W.2d 253, 256 (Tex.Crim.App.1997). The information in this case was therefore sufficient to charge Jacobs with possession of a gambling device on December 1, 2, and 5.

Shopping was located in September 2005.[3] *See id.* § 1.07(a)(39). Muir specifically testified that he never placed Jacobs at the business on December 1, 2, or 5; rather, the unidentified attendant paid him the cash.

■ " 'Possession' means actual care, custody, control, or management." *Id.* If an accused does not exclusively possess the place where the contraband is found, we may not conclude that the accused had knowledge of and control over the contraband unless additional independent facts and circumstances affirmatively link the accused to the contraband. *Poindexter v. State,* 153 S.W.3d 402, 406 (Tex. Crim.App.2005); *Edwards v. State,* 178 S.W.3d 139, 143 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *see also Rhyne v. State,* 620 S.W.2d 599, 601 (Tex.Crim.App. 1981) ("When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband."); *Campos v. State,* 716 S.W.2d 584, 585 (Tex.App.Corpus Christi 1986, no pet.) ("Typically, exclusive possession of the premises where the contraband is located is sufficient to establish [that the accused possessed the contraband]."). "The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's [contraband]." *Poindexter,* 153 S.W.3d at 406. While most cases applying the affirmative links rule involve the unlawful possession of a controlled substance, the rule applies to cases involving the unlawful possession of other contraband as well. *See, e.g., Corpus v. State,* 30 S.W.3d 35, 37–38 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (applying affirmative links rule in case involving unlawful possession of firearm); *Gaines v. State,* 874 S.W.2d 733, 735-36 (Tex.App.Houston [1st Dist.] 1994, no pet.) (applying affirmative links rule in case involving unlawful possession of firearm); *Savery v. State,* 782 S.W.2d 321, 327–28 (Tex.App.-Beaumont 1989, pet. denied) (applying affirmative links rule in case involving unlawful possession of child pornography); *Young v. State,* 752 S.W.2d 137, 140 (Tex.App.Dallas 1988, pet. ref'd) (applying affirmative links rule in case involving unlawful possession of firearm).

Other than Jacobs's status as the lessee of the premises where Gone Shopping was located, the State produced no additional independent facts or circumstances affirmatively linking Jacobs to the gambling devices. *See Rhyne,* 620 S.W.2d at 601–02 (holding that evidence was legally insufficient to support conviction for possession of controlled substance); *see also Poindexter,* 153 S.W.3d at 406; *Edwards,* 178 S.W.3d at 143. Because the evidence is undisputed that Jacobs did not exclusively possess the premises where the gambling devices were located on December 1, 2, and 5, we may not conclude that Jacobs had knowledge of and control over the devices absent additional evidence linking Jacobs to the devices. *See Poindexter,* 153 S.W.3d at 406; *Rhyne,* 620 S.W.2d at 601; *Edwards,* 178 S.W.3d at 143. We therefore hold that the evidence is legally insufficient to support Jacobs's conviction for possession of a gambling device for the

**3.** Jacobs also testified that she immediately subleased the premises to an unidentified third party and did not retake possession until December 6, 2005. The jury, however, was entitled to discredit this testimony. *See Evans v. State,* 202 S.W.3d 158, 162–63 (Tex.Crim. App.2006).

devices present at the business on December 1, 2, and 5. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Drichas,* 175 S.W.3d at 798.

## Conclusion

We hold that the evidence is legally insufficient to support Jacobs's conviction for possession of a gambling device. We therefore reverse the judgment of the trial court and render a judgment of acquittal.