**Affirmed and Memorandum Opinion filed March 6, 2012.**



In The

# Fourteenth Court of Appeals
_____

NO. 14-11-00394-CR
_____

**DANIEL LEE WRIGHT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law No. 14
Harris County, Texas
Trial Court Cause No. 1720663**

## MEMORANDUM OPINION

Appellant Daniel Wright was convicted by a jury of possession of a gambling device and was fined $2,000 by the judge. On appeal, appellant contends that: (1) the evidence was legally insufficient to support his conviction; (2) the court erred in denying appellant the opportunity to conduct a voir dire of a State's witness; (3) the court erred in denying appellant the opportunity to read from an appellate opinion during trial; (4) the

court erred by failing to include appellant's proposed jury instruction on the definition of "possession"; and (5) the electronic gaming devices were not gambling devices. We affirm.

## BACKGROUND

As part of an undercover investigation, Deputy Hughes of the Harris County Sherriff's Department made several visits to a game room where gambling was allegedly taking place. During her visits to the game room, Hughes placed bets using the electronic gaming machines, which included a "Progressive Pot O Gold," and on several occasions Hughes won amounts ranging from $25 to $50 on bets of less than $1. Each time she won, Hughes was paid in cash by an employee of the game room. As a result of her investigations, the Sherriff's Department eventually conducted two raids on the game room, the second of which provides the basis for this suit.[1]

On July 31, 2009, Hughes saw appellant working in the game room office, and Hughes testified that it "looked like [appellant] was doing some type of paperwork" when she saw him in the office. On January 21, 2010, Hughes again visited the game room, but was stopped by a security guard who asked to see her membership card. Hughes told him that she had been to the game room before but that she did not have a membership card. The security guard asked Hughes to wait there so he could "go get the owner and bring the owner outside to talk to [Hughes]." The security guard returned with appellant, who questioned Hughes for approximately fifteen minutes to determine if she was an undercover officer. When appellant was satisfied that Hughes was not an undercover officer, he allowed her to enter the game room.[2] Hughes returned to the game room several more times but did not see appellant any of those times.

_____

[1] Apparently a raid was conducted on October 28, 2009. The game room reopened, and a second raid was conducted on February 16, 2010.

[2] Hughes testified that appellant explained to her that they "had been raided a few months prior and he knew some descriptions of some undercover officers, and he wanted to make sure that [Hughes] was not one . . . ."

2

The Sherriff's Department obtained a search warrant based on Hughes's investigation and conducted a raid on the game room on February 16, 2010. Appellant was present at the game room when the raid was conducted, and a voluntary search of appellant uncovered two handguns, keys, and several receipts. Appellant acknowledged that the keys were for the gaming machines. One of the receipts was a receipt for payment to the security company that provided security guards to the game room, and had initials matching appellant's near the bottom.

Appellant was tried and convicted of possession of a gambling device, a class A misdemeanor. Punishment was assessed by the judge. Appellant timely appealed.

## ANALYSIS

Appellant raises five issues on appeal. We address each issue in turn.

## I. Legal Sufficiency

Because appellant's first and fifth issues are related, we address those two issues together. In his first issue, appellant contends that the evidence was legally insufficient to prove that appellant possessed a gambling device. In his fifth issue, appellant contends that the gaming devices are not gambling devices per se, in that they do not directly award money, but instead award only credits. Because a review of the legal sufficiency of the evidence requires us to determine whether there was sufficient evidence to prove that appellant possessed a gambling device, we address this issue in connection with appellant's legal sufficiency challenge.

In determining whether the evidence was legally sufficient, we view the evidence in the light most favorable to the verdict, and we determine whether any rational trier of fact could have found appellant guilty beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010). We are required to defer to the jury's determinations regarding the witnesses' credibility and the weight given to their testimony. *Brooks*, 323 S.W.3d at 899.

3

In reviewing the legal sufficiency of the evidence, direct and circumstantial evidence are treated equally. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct evidence is no more probative than circumstantial evidence, which may alone be sufficient to establish guilt. *Id.* Each fact need not point directly and independently to the guilt of appellant as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Here, in order for the jury to convict appellant, it was required to find beyond a reasonable doubt that appellant, on or about February 16, 2010, unlawfully and with the intent to further gambling, knowingly possessed a gambling device which he knew was designed for gambling purposes. *See* Tex. Penal Code Ann. § 47.06(a). The gambling device at issue is called a "Progressive Pot O Gold." It is undisputed that the "Progressive Pot O Gold" was present at the gaming room on the date in question; the disputed issues are whether the "Progressive Pot O Gold" was a gambling device and whether appellant had possession of the device.

Section 47.01(4) defines "gambling device" as:

[A]ny electronic, electromechanical, or mechanical contrivance . . . that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance.

*Id.* § 47.01(4). "Possession" is defined as "actual care, custody, control, or management." *Id.* § 1.07(a)(39).

First, appellant argues that the device in question was only capable of awarding points or tickets, and did not award money or an equivalent of money. As such, appellant argues that the device, in and of itself, was not a gambling device. In support of his argument, appellant cites *Jacobs v. State*, 245 S.W.3d 520 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd), but appellant's reliance is misplaced. In *Jacobs*, the court held that, to

4

prove that the devices were used as gambling devices, the State must have produced evidence that the player could exchange the points or tickets for "anything of value." *Id.* at 524. In that case, the State failed to produce evidence that the points were exchanged for money, and the court held that the evidence was therefore legally insufficient to support Jacobs's conviction for possession of a gambling device. *Id.* Here, the State elicited testimony that both Ms. Stoot—a visitor to the game room on several occasions—and Deputy Hughes made bets, won credits, and received cash payouts from an employee of the game room. The State also elicited testimony from a former employee of the game room who testified that he had personally paid winners with cash.

The statutory language in Section 47.01(4) specifically negates the requirement that the machine itself pay cash to the player so long as the player receives credits that may be exchanged for cash. Tex. Penal Code Ann. § 47.01(4); *see also Hardy v. State*, 102 S.W.3d 123, 132 (Tex. 2003) (holding that devices that dispensed tickets that could be exchanged for cash were gambling devices). We hold that the evidence is legally sufficient to show that the "Progressive Pot O Gold" meets the statutory definition of a gambling device. *See State v. Mendel*, 871 S.W.2d 906, 907–10 (Tex. App.—Houston [14th Dist.] 1994, no pet.) ("Because no skill is required to play the ["Lucky 8 Liner" video slot machine] and value is awarded, it is apparent that the device is designed for gambling purposes.").

Second, appellant argues that the evidence is insufficient to show that he possessed the gambling device. Appellant further argues that the evidence only demonstrates that he was present at the premises, not that he was the owner or lessee of the premises. Appellant again cites to *Jacobs v. State*, this time for the proposition that if the appellant did not exclusively possess the place where the gambling device was found, we may not conclude that he had possession of the gambling device unless additional independent facts and circumstances affirmatively link appellant to the device. 245 S.W.3d at 525. Again, appellant's reliance on *Jacobs* is misplaced. In that case, except for Jacobs's status as

5

lessee of the premises, the State produced no additional facts linking Jacobs to the gambling devices. *Id.* at 524–25. We hold that, in this case, there were additional independent facts and circumstances which affirmatively linked appellant to the gambling device.

This court previously has adopted a non-exclusive list of relevant factors that may affirmatively link an accused to contraband so as to establish possession. *See Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.). While most cases applying the affirmative links rule involve the unlawful possession of a controlled substance, the rule equally applies to cases involving the unlawful possession of other contraband. *Jacobs*, 245 S.W.3d at 525. The *Olivarez* factors that apply here include: (1) whether appellant was present when the search was conducted; (2) whether the device was in plain view; (3) whether appellant owned or had the right to possess the place where the device was found; (4) and whether appellant's conduct indicated a consciousness of guilt. *See* 171 S.W.3d at 291. The number of factors that affirmatively link appellant to the device is not as important as the "logical force" they create to prove the crime was committed. *Id.*

Here, there are a number of factors that affirmatively link appellant to the gambling devices. First, though it is undisputed that appellant is not the owner in fact of the game room, appellant was represented by the security guard to Deputy Hughes as the "owner" of the premises. This representation was strengthened by the fact that appellant questioned Hughes for approximately fifteen minutes before he personally decided that she could be admitted to the game room. Second, a State's witness testified that she had seen appellant in the game room office putting bundles of money into a suitcase. Third, the search of appellant during the raid revealed that appellant had the keys to the gambling devices. Fourth, the same search revealed a receipt for payment to the security company that had appellant's initials on the bottom. Fifth, appellant was carrying two handguns at the time of the raid, which seems more likely the conduct of an owner or manager than

6

somebody who was merely a construction contractor, as appellant alleges. Finally, appellant indicated a "consciousness of guilt" when he lied to the police officer at the time of the raid. Appellant told the officer he was in town to visit a friend who worked at the game room, but later testified during trial that he was at the game room that night to move the gambling machines. Therefore, we hold sufficient evidence was presented at trial that a rational trier of fact could find beyond a reasonable doubt that appellant knowingly possessed a gambling device. Accordingly, we deny appellant's first and fifth issues.

## II. Voir Dire of the State's Witness

In appellant's second issue, he alleges that the trial court erred by denying appellant the opportunity to conduct a voir dire of the State's witness, Ms. Stoot, during trial. Appellant argues that the trial court abused its discretion by not allowing defense counsel to question the State's witness prior to the admission of testimony which appellant alleges was irrelevant to the case being tried. However, appellant provides us with no references to the record and no cited case law to support his position.[3] Because this point of error contains no citations to the record or case law, appellant has waived appellate review of this issue. *See Jensen v. State*, 66 S.W.3d 528, 545 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (noting that the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record, and that conclusory arguments which cite no authority present nothing for our review). Regardless, the trial court has considerable discretion in limiting cross-examination to prevent confusion of the issues, and we review the trial court's decision for an abuse of discretion. *Sansom v. State*, 292 S.W.3d 112, 118–19 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Appellant has failed to demonstrate that the trial court abused its discretion.

---

[3] Appellant even acknowledges in his brief that, "Unfortunately, Appellant could not locate case law which would support the position."

## III. Trial Court's Refusal to Allow Case Law Read to Jury

In his third issue, appellant argues that the trial court erred by refusing to allow appellant to read from *Jacobs v. State*, 245 S.W.3d 520, to the jury.[4]   Once again, appellant provides no citations to the record or to case law to support his position. Moreover, for appellant to properly preserve error on this issue, he was required to make an "offer of proof" which would set forth the substance of the excluded evidence.   *See Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009).   Appellant made no such offer. The trial judge asked appellant to tender a copy of the opinion to the bench, but counsel did not have one.   Accordingly, appellant's third issue is waived.

## IV. Definition of "Possession"

In his fourth and final issue, appellant contends that the trial court erred when it refused to include appellant's submitted jury instruction on the definition of "possession." Appellant requested that the jury charge define "possession" as "[t]he right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object."   Appellant also wanted the instruction that "[m]ere presence at a place or in a place is not such a fact that would indicate possession."

A jury charge should contain a definition of any legal phrase necessary for the jury to properly resolve the issue.   *Hudson v. State*, 179 S.W.3d 731, 739 (Tex. App.—Houston [14th Dist.] 2005, no pet.).   If a phrase, term, or word is statutorily defined, the trial court must submit the statutory definition to the jury.   *Id.*   The jury charge as submitted defined "possession" as "actual care, custody, control or management."   The term "possession" was an element of the statutory offense and was alleged in the indictment.   Moreover, the language found in the jury charge is identical to the definition of "possession" found in the Penal Code.   Tex. Penal Code Ann. §

---

[4] Appellant's counsel apparently tried and successfully appealed *Jacobs* to the First Court of Appeals.

1.07(a)(39). Therefore, we hold that the trial court did not err by submitting the definition of "possession" found in the Penal Code over appellant's definition.

Appellant's argument that the court erred by failing to instruct the jury that appellant's mere presence was not indicative of possession also lacks merit. Here, appellant's presence was coupled with other factors indicative of possession, and presence is a factor that is properly considered in determining whether there were any affirmative links tying appellant to the gambling devices. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). Moreover, a "mere presence" jury instruction is an improper comment on the weight of the evidence. *Harris v. State*, 905 S.W.2d 708, 712 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd). Therefore, the trial judge properly denied appellant's requested instruction. *Id.*

Because we conclude that the jury instruction provided a proper definition of "possession," and because the trial judge properly denied appellant's requested "mere presence" instruction, we therefore overrule appellant's fourth issue.

## CONCLUSION

Having overruled appellant's first, fourth, and fifth issues, and having found that appellant's second and third issues are waived, we hereby affirm the judgment of the trial court.

/s/          Martha Hill Jamison
              Justice

Panel consists of Chief Justice Hedges and Justices Jamison and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).

9